IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GUY BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-0422-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER AFFIRMING THE COMMISSIONER'S DECISION**

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Guy Benson's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of diabetes, obesity, hypertension, status post toe amputation with related low back pain, a history of vision hemorrhages, and a history of coronary artery disease, but retained the residual functional capacity ("RFC") to perform sedentary work, including work as an order clerk, a stuffer, and a document preparer.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his applications on October 12, 2011, alleging a disability onset date of June 16, 2007. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on May 14, 2013, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on March 13, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ erred at step four because his credibility determination and his RFC determination are not supported by substantial evidence. These arguments are without merit.

**A.     The ALJ did not err in analyzing Plaintiff's credibility.**

Plaintiff argues the ALJ's credibility analysis is flawed because it failed to account for the consistency between his testimony that he could not work because he needed to elevate his legs and recommendations from his medical providers that elevating his legs would help reduce the swelling in them.

When the ALJ discounts a claimant's credibility, he must explain why he did so. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, his "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible. R. at 16. The ALJ explained Plaintiff's statements were not credible because: (1) the objective medical evidence supporting his reported symptoms was weak; (2) although Plaintiff reported being in considerable pain which limited his

3

ability to work, he did not take any pain medication, nor did his doctors prescribe any; (3) Plaintiff was non-compliant with his doctors' treatment instructions; and (4) despite claiming severe vision problems, Plaintiff had a driver's license and even worked for a period of time after his alleged disability onset date at an auto auction driving cars. R. at 16. Defendant also notes Plaintiff had a poor work history. R. at 208.

Plaintiff does not dispute these findings, and they are all valid reasons to discount his credibility. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (noting activities of daily living, such as driving, which are inconsistent with allegations of disability, detract from the claimant's credibility); *Combs v. Astrue*, 243 F. App'x 200, 205 (8th Cir. 2007) (taking only over-the-counter pain medication is inconsistent with complaints of disabling pain); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (holding the failure to follow prescribed treatment "weighs against a claimant's credibility."); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability.") Because the ALJ gave good reasons for discounting Plaintiff's credibility, the Court should defer to it. *Gregg*, 354 F.3d at 713.

Finally, Plaintiff's specific argument that he needed to elevate his legs for long periods of time every day lacks merit because the medical record as a whole does not support this claim. Plaintiff testified his legs would swell "really bad" if he did not keep them elevated. R. at 49. At a follow-up appointment after his toe amputation, Plaintiff's podiatrist noted that Plaintiff *could* wear TED hose for edema of the left leg while he was up and about. R. at 532. This notation indicates that Plaintiff could be up and around and could control his swelling with the use of TED hose. Other than that, there is one reference from a cardiology nurse practitioner who

4

recommended Plaintiff keep his legs elevated as much as possible. R. at 681. But this notation does not reference any need for Plaintiff to elevate his legs all day, every day. To the contrary, Plaintiff's edema was reported as mild in November 2011. R. at 511. Plaintiff denied experiencing any edema at a cardiology follow-up that month, and he denied significant edema at a cardiology follow-up in March 2012. R. at 516, 592. Reports from June, September, and October of 2012 show no edema. R. at 577, 624, 629. Although Plaintiff was noted to have edema in February 2013, the doctor thought it was due to his hypertension and uncontrolled blood pressure caused by Plaintiff's failure to take his medication. R. at 652. Later that month, Plaintiff was again noted to have no edema. R. at 658. Because the evidence as a whole does not support Plaintiff's claim that he had to elevate his legs all day, the ALJ did not err in failing to recognize a consistency between his testimony and the medical record.

**B.     The ALJ did not err in determining Plaintiff's RFC.**

Next, Plaintiff challenges the RFC determination. A claimant's RFC is based on the combined effects of all of his *credible* limitations. 20 C.F.R. § 416.945. In determining a claimant's RFC, the ALJ may consider a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and attempts to work. SSR 96-8p. It is the claimant's burden to prove his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Plaintiff contends the ALJ failed to adequately link his finding that Plaintiff did not need to elevate his leg to the evidence of record. Plaintiff contends this failure to construct a sufficient narrative bridge between the medical record and his RFC finding was reversible error.

As a threshold matter, the supposed error here is more accurately described as the ALJ's failure to find that Plaintiff needed to elevate his leg for long periods of time accompanied by a

5

failure to adequately explain this non-finding of this possible limitation.  The Court makes four observations.

First, as discussed above, the medical record does not support a finding that Plaintiff needed to elevate his leg for long periods of time, certainly not so much time that it limited his ability to perform sedentary work.

Second, "'[t]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.'" *Brown v. Colvin*, No. 3:12-5042-DGK-SSA, 2013 WL 2250234, at *3 (W.D. Mo. May 22, 2013) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

Third, the ALJ did not err in failing to assess Plaintiff's RFC on a function-by-function basis.  This is not a case where the ALJ simply described the claimant's RFC in general terms and failed to provide any analysis.  The ALJ began his RFC discussion by stating his conclusion that Plaintiff was limited to sedentary work with certain limitations, and then he described these limitations in detail.  The discussion was thorough and covered each of Plaintiff's impairments.  This is sufficient.  *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation").

Fourth and finally, the ALJ's opinion provided a sufficient narrative link between the RFC determination and the evidence.  Although the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion and cite specific evidence, the ALJ need not follow each RFC limitation with a *list* of the specific evidence on which the ALJ relied.  SSR 96-8p.  Such a requirement is inconsistent with the standard of review which mandates the court's decision be based on "all of the relevant evidence."  *Cf. McKinney*, 228 F.3d at 863 (discussing the applicable standard of review).  Imposing such a

6

requirement would result in ALJs writing longer decisions containing duplicative discussions of the evidence, an exercise which would increase the amount of time it takes to write a decision without improving the quality of the decision. *Hilgart v. Colvin*, No. 6:12-03022-DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). In this case, the ALJ spent three-and-a-half pages explaining how he formulated Plaintiff's RFC, including making detailed credibility findings and discussing the relevant medical opinions. R. at 14-18. This provided a sufficient narrative bridge between the evidence and the RFC determination.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   July 31, 2015                    /s/ Greg Kays
                                         GREG KAYS, CHIEF JUDGE
                                         UNITED STATES DISTRICT COURT